UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


GREGORY K. WARREN                )
                                       )
v.                                   )          NO. 2:05-CV-81
                                       )
DR. LINNEA NELSON, *et al.*     )


## MEMORANDUM OPINION


### I. **Introduction**

Gregory K. Warren, an inmate in the Northeast Correctional Complex ("N. E. C. X."), brings this *pro se* civil rights complaint for damages under 42 U.S.C. § 1983, claiming that his constitutional rights were violated when his colon cancer was misdiagnosed as hemorrhoids. The defendants are Quenton White, former Commissioner of the Tennessee Department of Correction ("T. D. O. C."); Linnea Nelson, D. O., a physician formerly at N. E. C. X. who treated the plaintiff; and Correctional Medical Services, Inc. ("C. M. S."), a corporation based in St. Louis, Missouri, which has a contract to provide health care for all Tennessee inmates.

Before the Court are two unopposed motions— a motion to dismiss filed by defendant White (Doc. 11) and a motion to dismiss or, alternatively, for summary judgment

filed by defendants Nelson and C. M. S. (Doc. 14). In his motion, defendant White argues that the plaintiff has failed to state a claim against him and that, in any event, he is immune from suit. Defendants Nelson and C. M. S. likewise suggest that the plaintiff has failed to state a claim against them and, additionally, that he has failed to exhaust administrative remedies and that Dr. Nelson is entitled to qualified immunity. This motion is supported by a brief and defendant doctor's affidavit. (Docs. 15, 17). The motions are well-taken and, for reasons which appear below, will be GRANTED.

## II. **Standards of Review**

A motion to dismiss tests whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). A motion to dismiss will be granted where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The complaint must be construed in the most favorable light to the plaintiff. *Scheuer v. Rhodes*, 416 U. S. 232 (1974). If matters outside the pleadings are presented to and not excluded, then a motion to dismiss for failure to state a claim must be treated as a motion for summary judgment. *See* Fed. R. Civ. P. 12(b). Here matters outside the pleadings have been offered in support of the motion filed by defendants Nelson and C. M. S., and thus, the Court will review their motion under the summary judgment standard. *See id.*

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court is obliged to view the facts and all inferences to be drawn from them in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). However, once a motion for summary judgment is made and supported with affidavit testimony, the non-moving party cannot rest upon the mere allegations or denials in his pleadings, but must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Indeed, that party "must present significant probative evidence in support of its complaint to defeat the motion for summary judgment." *Expert Masonry, Inc. v. Boone County, Ky.*, 440 F.3d 336, 341 (6th Cir. 2006). If the non-moving party does not so respond, summary judgment, where appropriate, will be granted. Fed. R. Civ. P. 56(e).

### III.  **Background**

The gravamen of the complaint is that the plaintiff was diagnosed by the N. E. C. X. prison physician as having hemorrhoids and was treated for that condition for some time, although he actually had colon cancer. More specifically, he contends that Dr. Linnea Nelson did not run readily-available tests which would have allowed her to make a correct diagnosis of colon cancer. A correct diagnosis, in turn, would have allowed proper

treatment to commence earlier; would have checked the growth of the cancer; and would have improved the plaintiff's prognosis.

He asserts that the defendant doctor, by failing to run those tests and by negligently misdiagnosing him and treating him, exhibited deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. He further asserts that C.M.S. also violated the Eighth Amendment by failing to intervene to ensure that he was given the appropriate tests. Quenton White, according to the plaintiff, is responsible for the care of inmates and control of T. D. O. C. policy and failed to perform the duties of his position.

According to the complaint, the plaintiff visited the N. E. C. X. clinic in February of 2003, complaining of rectal bleeding. He was given a cream to treat hemorrhoids. After several weeks of using the cream, the bleeding subsided, only to return some five months later—accompanied by abdominal and rectal pain. He saw a nurse who supplied him with more hemorrhoid cream, but she did not give him any tests or pain medication. The bleeding and pain escalated. He returned to the clinic and was given more hemorrhoid cream and a referral to a doctor.

In late August of 2003, the plaintiff was seen by defendant doctor, who came to his cell and performed a rectal examination on the plaintiff and prescribed the same over-the-counter hemorrhoid cream he had been using. Over the next two weeks, the pain and bleeding increased, and the plaintiff was prescribed a stronger hemorrhoid cream and suppositories.

Finally, in March of 2004—one year and twelve sick-call requests after the

plaintiff first reported rectal bleeding and other symptoms – he saw a different doctor. This physician gave him a rectal exam and then referred him to the DeBerry Special Needs Facility ("S. N. F.") for further evaluation. At the S. N. F., the plaintiff received a diagnosis of latter-stage colon cancer, as well as a confirmation by his treating physician that Dr. Nelson's diagnosis had been wrong. Thereafter, the plaintiff had to undergo extensive surgery to remove the malignant tumor, the surrounding tissues and nerves, and the rectal sphincter muscle. As a result of the surgery, the plaintiff is now sterile and has a permanent colostomy and permanent urinary problems.

In her affidavit, defendant Nelson avers that she became affiliated with C.M.S. on September 22, 2003 and served as N. E. C. X. 's medical director until the end of January of 2004. Her first awareness of the plaintiff and his medical complaints occurred on November 24, 2003, through information relayed to her by a nurse. Dr. Nelson reviewed the plaintiff's medical records and wrote orders prescribing sitz baths with warm water; directing that he continue to use hemorrhoid cream and suppositories; and instructing that he be scheduled for an appointment, to include a rectal examination, within three weeks—or sooner if his condition worsened.

According to her affidavit, Dr. Nelson performed a rectal examination on the

plaintiff two days later.[1] She found that he had an internal hemorrhoid but no further masses. Also on this date, she prescribed Anusol HC suppositories and hemorrhoid cream; directed that the plaintiff be given an appointment in two weeks; and that he be excused from prison work during the interim. On December 11, 2003, Defendant Nelson re-examined the plaintiff. Because of past interruptions in his treatment regimen, he agreed to follow the regime more consistently and to return for another evaluation.

Dr. Nelson avers that, on January 20, 2004, she reviewed the plaintiff's chart; concluded that his treatment had been sporadic; and noted on his chart that he consistently should follow the treatment regimen for eight weeks and that, if his condition did not improve significantly, she intended to send him to the S. N. F. for further evaluation. Dr. Nelson also directed that the nursing staff disallow any further lapses in treatment and that the plaintiff be scheduled for an appointment with her in four weeks. On January 26, 2004, Dr. Nelson ordered a CBC test to be performed on the plaintiff.[2] The test was performed and the results were within normal limits and showed no significant blood loss. Her affiliation with C.M.S. terminated at the end of January.

---

[1]  Though the plaintiff has alleged that Dr. Nelson came to his cell in late August of 2003 to perform the rectal examination whereas Dr. Nelson has affirmed in her affidavit that she performed the rectal exam on the plaintiff on November 26th of that year, the inconsistency is immaterial and has had no effect on the Court's decision in this summary judgment matter.

[2]  A CBC test measures the quantity, size and volume of blood cells. *See Leonel v. American Airlines, Inc.*, 400 F.3d 702, 706-07 n.5 (9th Cir. 2005).

Defendant doctor avers that the plaintiff received prompt and adequate medical treatment; that she treated him with compassion, due diligence and an appropriate degree of professionalism and civility; and that she never was indifferent to his complaints.

## IV. **Law and Analysis**

A. *Motion to Dismiss (Defendant White).*

The plaintiff has sued former T. D. O. C. Commissioner Quenton White on the basis that he is responsible for administering and controlling Tennessee prison policy and prison personnel. Clearly, the plaintiff is seeking to impose supervisory liability on defendant White. Liability under § 1983, however, must be based on more than respondeat superior, or a defendant's right to control employees. *See Taylor v. Michigan Dep't of Corrections,* 69 F.3d 76, 80-81 (6th Cir.1995); *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982). Absent some showing that this defendant authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct, the plaintiff has failed to state a § 1983 claim against him.

B. *Motion to Dismiss or, alternatively, for Summary Judgment (Defendants Nelson and C. M. I.)*

Punishments that involve the unnecessary and wanton infliction of pain are proscribed by the Eighth Amendment. Deliberate indifference to the serious medical needs of prisoners constitutes an unnecessary and wanton infliction of pain and, therefore, a

violation of the Eighth Amendment.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   In

order to establish "deliberate indifference" on the part of a prison official, a plaintiff must

satisfy both an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834

(1994).  The objective component requires the plaintiff to show a "sufficiently serious"

deprivation and the subjective component requires him to show that a defendant acted with

a conscious disregard to a substantial risk of serious harm to him.  *See Farmer*, 511 U.S. at

837.  The latter showing must comprise more than mere negligence, and if a defendant took

reasonable measures to abate the harm, she will not be held liable, even if the harm was not

ultimately averted.  *Id.*, at 835-36.  Claims of negligence are insufficient to entitle a plaintiff

to relief.  *See Farmer*, 511 U.S. at 835;  *Estelle*, 429 U.S. at 105-06.

In this case, by the plaintiff's own allegations, he saw multiple medical care providers;

was treated each time with various medications (albeit, for the wrong condition); was

examined; and was referred to the S. N. F. for assessment/treatment.  Defendant doctor did

not disregard the plaintiff's need for medical care, but  took reasonable steps to diagnose and

treat the plaintiff.  At best, his contentions that Dr. Nelson failed to perform certain tests;

incorrectly diagnosed him as having hemorrhoids; failed to recognize the serious nature of

his condition; and failed to afford him appropriate treatment would comprise a claim for

medical negligence.  The Court concludes that the plaintiff has not shown any evidence of

deliberate indifference on the part of defendant doctor.  *Farmer*, 511 U.S. at 835 (deliberate

indifference "entails something more than mere negligence.").  Because the questioned

conduct cannot be said to constitute an unnecessary and wanton infliction of pain,  the

allegations regarding such conduct do not state a valid claim under the Eighth Amendment.

*Estelle*, 429 U.S. at 105-06.

The plaintiff's allegations (i.e., that the medical staff did not reach the proper

diagnosis, despite his reporting that he was experiencing a multitude of symptoms which are

medically-recognized symptoms of colon cancer and that, regardless of his debilitating

symptoms, he was forced to work in the kitchen because a nurse would not give him an AVO

excusing him from work) also have been examined under the "grossly inadequate care"

standard enunciated in *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834 (6th

Cir. 2002).  In *Terrance,* the Sixth Circuit found that the Eighth Amendment could be

violated by physicians and other health care providers who rendered grossly inadequate

medical care to a patient who had been involuntarily committed to a mental institution.  The

defendants had had knowledge that the patient was an obese diabetic who suffered from

hypertension and a heart condition and that he was being given medication which placed him

at increased risk for dehydration, hyperthermia and heat stroke.  They also had had

knowledge of the patient's numerous health risks, including that his room was hot and that

he had been permitted to go outside on a 95-degree day in July, with humidity measuring

over 90 percent and a heat index of 148.  The patient died at the hospital due to

cardiopulmonary arrest and hyperthermia. The circuit court concluded that these facts might well show an Eighth Amendment violation on the part of the defendant health care providers because "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Id.*, 286 F.3d at 843-44.

Here, though it was ultimately proven to be the wrong treatment (because the diagnosis was wrong), the plaintiff received a great deal of medical attention and treatment and there are no facts to show that it was cursory. While the plaintiff claims that an incorrect diagnosis and prolonged treatment for the wrong condition constitutes "gross negligence," his claim, at its heart, sounds in state tort law of medical malpractice. *Estelle*, 429 U.S. at 106 ("Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). A claim for medical malpractice, even under the grim facts alleged here, is not transmogrified into a constitutional tort simply because the victim happens to be a prisoner. *Id.* Though the plaintiff's colon cancer, unquestionably, was a serious medical condition, the treatment he received was not so cursory as to amount to no treatment at all.

Finally, Correctional Medical Services, Inc., the corporate entity who is contractually obligated to deliver medical care to Tennessee inmates, has no § 1983 liability to the plaintiff if the conduct complained of on the part of its employee is not a constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Bowman v. Corrections Corp. of America*, 350 F.3d 537, 545 (6th Cir. 2003) (citing to *Heller*). Here, because the conduct of Dr. Nelson, the putative employee (or affiliate), is not of a

10

constitutional variety, the plaintiff has no claim for relief against her employer.

## V.  **Conclusion**

Accordingly, for all the above reasons, the defendants' respective motions will be GRANTED, and this action will be DISMISSED.  Since the federal claims lack merit, the Court will DECLINE to exercise supplemental jurisdiction over any state law claims for medical malpractice that might have been impliedly asserted in the complaint; *see United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), and they will be DISMISSED without prejudice.  28 U. S. C. § 1367(c)(3).

A separate order will enter.


**ENTER**:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE